May it please the Court, my name is John Burgess, and I represent the appellant in this matter, Christopher Scott Peterson. In this case, Appellee Porter, the Tillamook County District Attorney, is advocating for Buckley, namely, the fact that Peterson was eventually indicted by a grand jury somehow retroactively transforms his pre, meaning Porter's pre-indictment conduct, into advocacy. This was the argument advanced by the prosecutor and Buckley, almost identically. But the court held, the high court held, that prior to the indictment, a prosecutor is not acting as an advocate. This is because absolute immunity is only narrowly justified for conduct that is intimately associated, that's the court's term, with the judicial process. Pre-indictment, there is no judicial process to be intimately associated with, and therefore, absolute immunity does not attach, and qualified immunity is the proper standard. So I'm sorry, can you, so your position is that Mr. Porter engaged in some sort of pre-indictment misconduct? Yes. Okay, can you tell me what that was and cite me to the record where I would find it? Yes. So, prior to the indictment, which was issued by the grand jury in late April, Mr. Porter, on I believe April 4, 2011, Mr. Porter met with his brother-in-law, Timothy Dolan. Former brother-in-law at the time. I believe at the time he was still his brother-in-law, but now is no longer the brother-in-law, but we can look at the record. In any event, he testified in his deposition, both of them, that they were close friends and routinely had family gatherings and dinners together. Dolan. This is Dolan and Porter. They met. They had never done this before. Mr. Porter met with Dolan where Dolan asked Mr. Porter to bring criminal charges against Peterson so that Teat could, quote, get his money. Doesn't Mr. Dolan in his deposition deny that and say that all he did was make the introduction? He would never dream of telling Mr. Porter what to do? Well, I think saying that you wouldn't dream that you're telling him what to do is different from asking him to bring criminal charges, but that isn't what all of the testimony is relating to Mr. Dolan. Let me ask, what's improper about that? Somebody asked the DA, here's a problem, why don't you look into bringing charges against this fellow? Well, so I... Well, what's... That's a fair question. What's wrong with that? I mean, why is that... Well, we can't look at that particular act in isolation of the other facts that relate to it. First of all, Mr. Porter had never met with Mr. Dolan concerning bringing criminal charges against anyone before. Mr. Porter has never brought a criminal charge of theft against any person based on where there was an absence of an underlying police investigation. Does it make a difference that even, as I recall, they took this to a grand jury? Yes, it was taken to a grand jury. Right. How does that fit in here? So I mean... Do you claim that the prosecutor presented the grand jury with false evidence? Well, false evidence was presented at the grand jury, yes. But do you... Is that one of the wrongdoings of the prosecutor? It's one of the wrongdoings of Mr. Teed, or Dr. Teed, rather, but it is not... at the time, Mr. Porter knew the facts were untrue, but the evidence in its totality suggests that he didn't... So my question to you was, did the prosecutor knowingly present false evidence to the grand jury? I don't know the answer to that question. No. So the answer is effectively no. Okay. So what else, in answer to Judge Burgess's question, what else did the prosecutor do before charges were filed that you allege was more in the nature of an investigative kind of role as opposed to a prosecutorial? So we should be clear about one thing, which is that prior to the attachment of probable cause at the grand jury or pre-indictment, Buckley and Gensler and Milstein, the Ninth Circuit cases, make clear prior to the attachment of probable cause through a grand jury proceeding, there can be no advocacy activity by a prosecutor because there's no case in which they could be bringing... In which they could be acting as a prosecutor. So by definition, they are acting as an investigator. I understand that, but can you again point to the evidence that supports your argument that he somehow committed misconduct before presenting the case to the grand jury? Well, so I think that that is conflating two questions. One is, what did he do that was investigative? And the question is, he received a complaint from an individual. He reviewed documents. He interviewed a witness. He impaneled a grand jury. He appeared at the grand jury with a witness that he had met with, and then the grand jury reached its conclusion. So all of those things occurred prior to the attachment of probable cause under Buckley. So all of that conduct is inherently investigative in nature by definition. So the question then is, what of that activity violates his misconduct? I don't think that's the standard. The question is whether it's malicious prosecution. That's the question. I thought it has to be violates the Constitution, but in that process, he's somehow rather deprived. Right. So the question is, did he engage in malicious prosecution? In the Ninth Circuit, you adopt the malicious prosecution standard of the state in which the court sits. In this case, it's Oregon. Malicious prosecution has five elements. One of them is malice. One is lack of probable cause. So in this case, he met with an individual he knew well. He received a complaint where there was virtually no evidence. He interviewed that witness. He decided to bring forth an investigation, as the circumstantial evidence suggests, and a jury could conclude, as a favor to his friend and brother-in-law, and not based on the merits of the case, which is what is required. I'm sorry. I'm sorry. How does the fact that there was additional evidence that he reviewed, which was a neighbor of Teed's, had had a similar problem with Peterson, that was brought to his attention? He knew about that before he made the presentation to the grand jury, didn't he? Well, so that's his testimony, is that he said that, but he actually presented no evidence to the grand jury concerning C.L. Downing. So that's the witness that you're referring to. He knew about that before he brought Teed's case to the grand jury. Right. There was a, and also to be clear, in the deposition of Mr. Porter, he could not identify any similarities of conduct between the complaint relating to Ms. Downing and the complaint in this case. So it's not, just because another citizen complained about him does not somehow give rise to probable cause that he had committed theft, aggravated theft in the first degree. So the issue here is that he had no evidence, literally at any time, relating to his intent. Didn't he also have the evidence from the, what's the body, the Oregon Construction Committee, where he went? The Construction Contractors Board? Didn't he, wasn't a conclusion of that special master, whatever the- He was an arbitrator. The arbitrator. Didn't the arbitrator find that there was this unexplained absence of $172,000 or something like that? Well, so he, that's not, so there was the $50,000 check, which hadn't been accounted for. And then there's an overall amount that was awarded in the arbitration award. But in any event- About $170,000? That was the arbitration award. Okay. But didn't Porter have that information as well? Yes. The arbitrator's decision? Yes. That was part of the packet of documents that was provided to him. We should be clear that not every loss before a CCB arbitrator is evidence of or furnishes probable cause that a person has engaged in aggravated theft in the first degree. Wasn't the arbitrator concerned that Mr. Peterson was told before the arbitration what he needed, what information he needed to provide, and he failed to provide that to the arbitrator? Yes. When Mr. Peterson, appearing pro se at the CCB arbitration, failed to provide the accounting, he lost the arbitration. So that's a true statement. But again, in order, there's no dispute that Mr. Peterson was provided the money willingly by Dr. Teed. So then the question is, in order to be guilty of aggravated theft, there would have to be some evidence that he either intended to deceive him, do all this work, or get the money for the work and then not do it. That would be theft by deception. Or that he knew that he was not entitled to the money and kept it anyway. There's literally zero evidence, either at the CCB arbitration, or in this case, presented by either defendant that even touches on the subject of Mr. Peterson's intent. And they never looked for it because they didn't care about it to begin with. Is there a standard that a DA must meet to take a case to a grand jury? Well, in an investigative function, they could simply go to the grand jury with the purpose of conducting an investigation. So they, at which point, they wouldn't need probable cause. What the actual criminal requirement of bringing it to a grand jury, I don't know the answer to that question. But in this certain- But you don't point to any evidence that in the so-called investigatory phase, that the you don't claim, you don't- He didn't. No, he didn't manufacture evidence. He didn't allegedly get some witness to tell a different story or to fabricate a story or anything like that? No. Well, and that isn't necessarily required. So for example- I understand, but in most of these cases, there's a claim of false evidence. Right. So I think that this is analogous to a case like Milstein, for example. So in Buckley, the question was about shopping around for an expert. So in that case, they weren't actually fabricating a boot print. The boot print existed. They looked for an expert that they knew would basically tell them what they wanted to hear. So in that case, they were essentially, they had the conclusion first, and then they were moving forward with the investigation regardless of the evidence. This is actually analogous to that because he knew that that wasn't the case. And I'm sorry. No, okay. I understand your point. I'll give you a minute for it, but I'd like to let you go over. Thank you. Thank you. May it please the Court. Patrick Ebbitt for Defendant William Porter. This Court granted Porter's most first summary judgment correctly on two grounds. Prosecutorial immunity and probable cause. And I'll begin with the prosecutorial immunity issue. The decision of whether to seek an indictment is a core prosecutorial function. In Buckley, the Court noted in Note 5 that there is a comma mod tradition for immunity for the decision to bring an indictment, whether the prosecutor has probable cause or not. Here, Mr. Porter reviewed evidence, and it had been submitted to him, including the Construction Contractors Board investigation and a letter from Mr. Teague. And then, having reviewed that evidence, he chose to pursue an indictment by submitting the case to a grand jury. That is all purely prosecutorial. He didn't do any independent investigation of his own. He didn't go out looking for boot print experts. He didn't, in some preliminary phase of the investigation, go, you know, marching off and telling people, trying to suborn perjury from potential witnesses. His role was purely passive. What if he was doing it as a favor to his brother-in-law, former brother-in-law, Dolan? Excuse me? What if he was doing it as a favor to Dolan? Well, I mean, there's no evidence of that. I mean, did Dolan happen to be his brother-in-law? Well, that certainly seems to be the argument of Peterson. And I, Tillamook County has more cows than people. I mean, the fact that there was, I imagine the number of attorneys in that county is in the mid-double digits at best. I mean, it's not at all surprising that there'd be some relationship between two attorneys in town. And I don't see how that matters as to what Porter did here. The question is whether Porter's prosecutorial function included reviewing evidence and after review of that evidence, submitting it to a grand jury. And under Buckley and Lacey v. Maricopa County says that the functions for which absolute immunity have been granted include the lawyerly functions of analyzing evidence and then presenting that evidence and analysis to courts or, as here, grand juries. And that's all Porter did here. There's no claim there's any false evidence here, is there? Excuse me? False evidence or, you know, that he knew that any of the material that he presented to the grand jury was false? There's zero evidence of that. And in fact, prosecutorial immunity includes doing just that. Doing just that. I mean, that's one of the, frankly, sort of controversial aspects of prosecutorial immunity is that a prosecutor can do corrupt things and still yet be immune from prosecution. But there's no evidence of that here. I mean, and I think one thing that's really critical in this sort of investigation versus prosecutorial function distinction that Plaintiff talks about is that here Porter effectively received, almost with a bow on it, a completed investigation in the form of the Construction Contractors' Board investigation. Construction Contractors' Board had taken evidence from numerous, sworn testimony from numerous witnesses, reviewed hundreds of exhibits and concluded that, among other things, Plaintiff had taken $50,000 from Teague and then failed to offer any explanation for where it went, didn't include it on his final billing as having received it at all. And according to the court, the arbitrator found that he had received no billing or credit for any services rendered. That's a polite way of saying that Teague, Plaintiff took a large sum of money and it disappeared. Didn't Porter actually also put on a witness that provided some exculpatory testimony? It was a subcontractor who... At trial, there was a... Was it at trial? I thought it was at grand jury, at the grand jury stage. The grand jury stage, but that was well after the decision to prosecute had been made. There may have been ultimately some evidence that called the Construction Contractors' Board's conclusion into doubt, but that doesn't weigh against Porter. Was your colleague going to say anything? Excuse me, yeah, he has five minutes to address... Five? Okay. Okay. And my time, as I see it, is expired. Okay, your time is just up. Excuse me? Your time is... Is expired, yes.  Thank you. And we would ask the court to affirm. Okay. Thank you. Okay. Thank you. Thank you. Good morning. Jay Beatty, appearing for Dr. Ronald Teed. The court granted summary judgment on two grounds. Dismissed the malicious prosecution claim because there was no evidence that Dr. Teed initiated the criminal prosecution, and there was no evidence that he lacked probable cause in continuing or initiating the criminal prosecution, if indeed he did. The Oregon case law is abundantly clear that a crime victim doesn't initiate a criminal prosecution by simply complaining to a DA, and then the DA later presents the case to a grand jury, and the grand jury returns an indictment. The legal presumption is that the DA has discretion to prosecute, and that the DA is the party initiating the prosecution, and not the complaining victim. To quote from Humbert v. Knutson, the exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings. That's the law in Oregon. There is of course an exception to that law where a party procures the prosecution of a claim by essentially depriving the district attorney of his or her discretion to exercise an intelligent decision as to whether to prosecute. And that occurs when there's undue influence or when a complaining crime victim lies and knowingly lies and basically compels the district attorney to pursue the claim. There's no evidence of that occurring here. There's no evidence that Dr. Teed unduly influenced Mr. Porter. There's no evidence that he lied to Mr. Porter in any way that was a determining factor in his decision to bring the prosecution in this case. What Dr. Teed knew at the time that he met with Mr. Porter was that he had presented a case for two days to the Construction Contractors Board, and the Construction Contractors Board had determined, among other things, that in February of 2009 he paid $50,000 for which he received no credit or value. So the takeaway for Dr. Teed at the time that he met with Mr. Porter was he'd been ripped off. He'd been ripped off to the tune of $50,000. Now he thought that he'd also been ripped off in various other ways. He had a house that had, at least to him, looked like it had been gutted and he'd got nothing. The only thing that had been completed, in his estimation, was the underground portion of the septic system, which hadn't even been connected. So to him, he had paid $300,000. But the arbitrator disagreed, right? The arbitrator said there was value in the work that was done. Right. The arbitrator ultimately disagreed with him in some respects and said, listen, you got value in these ways. You do have a completed underground septic system, even though it's not hooked to anything. So the arbitrator just didn't accept what he had to say wholesale. He listened to five witnesses total, including Dr. Teed. This occurred over a two-day period and there were over 200 pages of testimony and exhibits that had been supplied. This procedure also allowed the parties to cross-examine each other, too. So Mr. Peterson had the opportunity to cross-examine Dr. Teed and vice versa. So there was a quite developed procedure that had occurred. The court, the district court in this case, also granted summary judgment because there was no evidence that Dr. Teed had continued the prosecution. In the three-year interval between the issuance of the indictment and the actual criminal trial, there was a single email that was exchanged between the district attorney who was in charge of the prosecution and Dr. Teed's wife. There's no evidence that there was even a response to it. And there's certainly no evidence that Dr. Teed was pushing the prosecution. And the Oregon case law is clear that simply appearing at the criminal trial and giving testimony doesn't constitute the continuation of the criminal prosecution. There really, at basis, no evidence that he initiated this criminal prosecution. And briefly, there is abundant probable cause had he indeed brought this prosecution. Probable cause being a two-day hearing that resulted in a determination by a construction contractor's board arbitrator that he'd been ripped off to the tune of $50,000. He paid a check in February of 2009 for $50,000, didn't show up on the books. He didn't receive anything for it. That was conclusive. It was reduced to a judgment as between Dr. Teed and Dr. Peterson, that's issue preclusion. So there's no evidence that he did not believe that he'd been ripped off. And in fact, there's no objective basis for him not to believe he hadn't been ripped off. No evidence in this case that he was aware of any sort of contradictory evidence that indicated that there had been no theft. Thank you. Okay. Thank you. I'll give you a minute for rebuttal. Thank you. I'd like to address first what Councilman Forrester-Porter indicated. So I think the first thing to say is that all of the cases that are controlling on this subject have made clear that simply because reviewing evidence is something that prosecutors in fact do, that that doesn't render every time a prosecutor reviews evidence to mean that they are doing the act of a prosecutor. In fact, that argument was specifically made and rejected in Buckley and has been routinely reaffirmed in subsequent cases in this circuit. It's just simply untrue as to the state of the law. They're not purely prosecutorial. The police routinely receive complaints from witnesses, interview witnesses, review documents, and assess them whether or not they could potentially give rise to criminal liability. The police routinely do that. Is that a requirement that the police have some involvement beforehand? There's no requirement, but I think that what is the reason why it's relevant in this case is that when you take all of the facts together, the question here is whether a jury could believe that Mr. Porter brought the case as a favor to his friend and not based on the merits of the case prior to the attachment of probable cause, at which point there was prosecutorial immunity. So the question is, prior to that point, is there evidence from which a jury could believe that he had engaged in a malicious prosecution? And there's ample evidence. He had never done this before. And there's this talk about more cows than people, but the fact is that Dolan testified that he had never done it before. They both have been attorneys for 25 years in the same county. They have never done it before. And Porter testified that he had never brought a criminal charge without there being an underlying criminal investigation. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   Thank you. Thank you. Thank you. Thank you, counsel.
judges: Fernandez, Paez, Burgess